## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS



DARRELL D. DEBNAM,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )
                                  ) Civil Action:_____
                                  ) Lead Case 05-md-00527RLM-GAN
                                  )
FEDEX HOME DELIVERY, a division of )
FEDEX GROUND PACKAGE SYSTEM IN    )  CA 1 1 0 2 5  GAO
        Defendants,               )
                                  )

### COMPLAINT

MAGISTRATE JUDGE MBB

### INTRODUCTION

1.      This is an action brought by a former multi route delivery driver of FedEx Home

Delivery, a division of FedEx Ground Package System, Inc. (collectively "Defendant" or "FedEx

Ground") for its unlawful misclassification of the plaintiff; a multi-route driver, as independent

contractors instead of an employee and other related state and federal law claims. Further, the

plaintiff brings this action for violations of M.G.L. c. 93A.

### PARTIES

2.      Plaintiff, Darrell D. Debnam ("Plaintiff") is an adult resident of Brockton,

Massachusetts. Plaintiff, Debnam, worked as a FedEx Ground driver from 2004 to June 2009.

From 2004 to 2009, he worked as a multi-route contractor.

3.      The Defendant is a Delaware Corporation with its principal place of business

located at 1000 Fedex Drive, Moon Township, Pennsylvania. At all relevant times, FedEx

Ground engaged in transportation and delivery services in Massachusetts.

## JURISDICTION AND VENUE

4.      Jurisdiction in this matter for Count VI s based upon 28 U.S.C. Section 1331.

5.      Jurisdiction and venue in this matter for Counts I-V and VII-XIV are based upon diversity of citizenship. The Defendant is a resident of the state of Delaware and the Plaintiff is a resident of Massachusetts. The amount in controversy is in excess of the statutory minimum. As a result, jurisdiction is based upon 28 U.S.C. Section 1332.

## STATEMENT OF FACTS

6.      The plaintiff began working for FedEx as a delivery driver in its FedEx Ground division. From 2004-2009, he acquired multiple routes from other drivers. As of June 2009, the plaintiff operated nine (9) delivery routes and owned or leased eleven (11) vehicles.

7.      Many, if not all of these routes, were purchased by the plaintiff from other drivers. These purchases were brokered by FedEx managers who requested that the plaintiff take over these routes to solve "problems" caused by poor performance on the part of other drivers.

8.      The purchases of the routes brokered by FedEx required the plaintiff to pay the "problem" drivers for the rights to the routes and often required him to purchase the driver's FedEx vehicle at a cost that greatly exceeded the fair market value.

9.      On or about December 2008, the plaintiff began to notice that packages were being diverted by FedEx from his delivery area. The plaintiff complained to FedEx managers that FedEx had been diverting packages from his delivery service area to other contract drivers which resulted in loss revenue to the plaintiff. FedEx management assured him that these practices (which were violations of the operating agreement) would stop. These violations of the operating agreement however, continued up to the plaintiff's termination.

10.     On June 10, 2009, the plaintiff reported to FedEx's West Bridgewater terminal where his contract was summarily terminated and he was escorted off of the premises. This action was done in retaliation for the plaintiff's complaints about the diversion of packages from his delivery routes in violation of the operating agreement between the parties. The drivers who had worked under the plaintiff were told they had only two choices, stay and work for another driver under contract or leave. FedEx then reassigned the plaintiff's routes to other contract drivers. FedEx never compensated the plaintiff for the routes that were taken from him and assigned to other drivers. The plaintiff's vehicles remained at the FedEx terminal.

11.     Recently, FedEx has given notice to the plaintiff that it intends to charge the plaintiff for towing, storage and other related charges for the plaintiff's vehicles that remained at the West Bridgewater terminal.

12.     FedEx Ground, as an affiliate of FedEx Corporation, and employs hundreds of drivers in Massachusetts to pick up and deliver packages to its customers.

13.     As a condition of employment, each FedEx Ground driver (and multi-route driver) is required to sign a lengthy form contract entitled the "FedEx Home Delivery Standard Contractor Operating Agreement" and/or "Pick-up and Delivery Contractor Operating Agreement" that mischaracterizes each driver as an "independent contractor". These Operating Agreements (hereinafter referred to as "Operating Agreement", the "Agreement" or "OA") were designed to conceal the true nature of the relationship between FedEx Ground and its drivers: that of employer and employee.

14.     The Operating Agreement contains various statements purporting to Classify Plaintiff as an independent contractor. At the same time, the Operating Agreement retains to the company, *inter alia,* the right to approve or disapprove any vehicle used to provide service,

3

mandates that the vehicle(s) be clean and presentable fashion free of body damage and extraneous markings, the right to approve or disapprove any driver or helper who provides service, the right to approve or disapprove the purchase or sale of any vehicle, the right to assign pick-up and delivery stops to each driver, the right to temporarily or permanently transfer portions of any route to another with or without compensation, the right to determine when a driver has "too few" or "too many" packages to deliver on a given day and the right to adjust settlement and payment figures given to the driver based on such reduction or addition of packages, the right to have company personnel to ride with drivers to determine if their routes need to be "reconfigured", the right to inspect vehicles and drivers for compliance with company-promulgated appearance standards, the right to terminate the contract upon thirty days notice or whenever the company unilaterally determines that any provision of the contract has been "violated" amounting to the right to terminate at will, the right to require the use of communication equipment and the wearing of company uniforms, the right to take a vehicle out of service, the right to review and evaluate "customer service" and to set and change standards of such service, the right to require drivers to perform service at "times" requested by customers and determined by Defendant, the right to withhold pay for certain specified expenses, the right to require purchase of specified insurance and numerous other purchases by drivers, the right to require completion of specified paperwork, and other rights reserved to Defendant.

15.    The Operating Agreement is and at all relevant times has been a contract of adhesion, drafted exclusively by Defendant and/or its legal counsel, with no negotiation with multi-route and single route drivers, who are required to sign the Agreement as a condition of employment. Plaintiff is required to sign the form contract as is, without any changes made to the terms contained therein. Each year, drivers are required to sign additional Addenda which are

4

likewise not subject to negotiation and are unilaterally drafted adhesion contract provisions. The Agreement is, and at all material times has been unlawful, unconscionable and fraudulent in form and effect.

16.     Though the Agreement labels the drivers as independent contractors, the behavioral and financial control manifested over the drivers by Defendant demonstrates that the drivers are employees rather than independent contractors. Such control includes, but is not limited to, the following matters:

      a.     Defendant employs supervisors and managers who have supervisory responsibility over the drivers and assign and direct their work. These supervisors and managers work in the terminals where the drivers report to retrieve the packages that they deliver for Defendant's customers in furtherance of Defendant's business operations.

      b.     The drivers are required to comply with Defendant's instructions in terms of written and unwritten policies, procedures, and directives appearing in the Agreement and unilaterally promulgated by Defendant from time to time regarding the completion of the drivers' duties. Drivers suffer financial penalties and/or disciplinary actions for failure to comply with such policies, procedures, and directives.

      c.     Upon starting to work for Defendant, the drivers receive training in Defendant's policies and procedures, in the documentation Defendant requires of drivers, and in the technology Defendant mandates the drivers to use in the performance of their work for Defendant.

      d.     Though the drivers are required to purchase or lease the vehicles they use while working for Defendant and to purchase the uniforms they wear in performing said work, Defendant requires that the drivers adorn their vehicles and uniforms with Defendant's logo and effectively prohibit the drivers from using their vehicles or uniforms for other business while so adorned. Such requirement prevents the drivers from using their vehicles and uniforms to offer services to the general public.

      e.     In addition to paying the drivers for each package picked up and/or delivered, the Agreement provides that Defendant will pay the drivers a set amount for each day that the driver provides services to Defendant as well as a premium for the drivers' tune when the drivers' route contains a small amount of package deliveries. Such payments are made to me

5

drivers each week. Thus, their pay basis is not simply by the job, but by the time spent working.

f.    Though the Agreement purports to give the drivers proprietary control over their routes, Defendant changes the drivers' routes from time to time without the drivers' permission and prohibit the drivers from selling their routes or having other individuals perform in their place without the express prior approval of Defendant.

g.    Defendant exerts a high degree of control over me drivers' work. For example, they have begun installing GPS systems in the drivers' vehicles enabling Defendant to track the drivers' whereabouts at all times while working.

17.    Though the Agreement labels the drivers as independent contractors, the type of

relationship between Defendant and the drivers demonstrates that the drivers are employees,

rather than independent contractors. Factors showing an employment relationship include, but

are not limited to, the following:

a.    The work of the drivers in picking up and delivering packages for Defendant's customers is completely integrated into the business of Defendant such that Defendant's business depends significantly on the performance of the services that the drivers perform.

b.    Though the drivers are required to purchase or lease the vehicles they use in working for Defendant, and to purchase the uniforms they wear m performing said work. Defendant requires mat the drivers adorn their vehicles and uniforms with Defendant's logo and effectively prohibit the drivers from using their vehicles or uniforms for other business while so adorned. Such requirement prevents the drivers from using their vehicles and uniforms to offer services for other, similar businesses.

c.    Though the Agreement purports to give the drivers proprietary control over their routes. Defendant exerts a high degree of control over the drivers ability to sell their routes or have other individuals perform in their place. Such sales and substitutions require the express prior approval of Defendant, making the services of a type mat must be rendered personally by drivers who have effectively been hired by Defendant.

d.    Defendant prevents the drivers from choosing when and how much they care to work for Defendant, instead requiring the drivers to work a minimum number of hours and shifts and prohibiting the drivers from refusing work, such as picking up certain packages.

6

       e.      Many drivers have continued their relationship as drivers for Defendant exclusively over many years.

18.    Defendant, per the Agreement, requires the drivers to pay Defendant's operating

expenses, including but not limited to:

       a.      costs relating to the lease or purchase and operation of vehicles to perform work for Defendant and to maintain and repair such vehicles;

       b.      costs relating to the purchase of insurance, including vehicle insurance and work accident insurance;

       c.      costs relating to the purchase of uniforms adhering to Defendant's precise specifications;

       d.      costs of hiring temporary or replacement drivers when the drivers are unable to perform their work due to injury or illness or when the drivers take vacation or other time off; and

       e.      the share of federal employment taxes for which employers are liable; and

       f.      other costs normally associated with the operation of a business and included in Defendant's business support package, such as maps, logos and signs, training, modems, and scanners.

19.    Defendant also routinely takes other unlawful deductions from the drivers pay as

well and/or does not pay the drivers for all work performed or amounts due to them, including

not paying them for training time, withholding final pay and/or vacation pay.

20.    By retaining behavioral and financial control over the drivers despite the express

language to the contrary in the Agreement. Defendant has committed a widespread and

systemic breach of the terms of said Agreement.

21.    By retaining behavioral and financial control over the drivers despite the express

language to the contrary in the Agreement, Defendant has misrepresented to the drivers that they

are independent contractors (and thus entrepreneurs with the ability to independently manage and grow their businesses), when in fact they are employees (and thus entitled to a variety of legal benefits that inure from the employment relationship).

22.     Defendant's right of control over Plaintiff is also retained and/or exercised by Defendant as demonstrated by concealed and/or undisclosed extra-contractual sources such as Company written rules and policies described above and unwritten practices which supplement and fill gaps in the written contract.

23.     Defendant has created and regularly updated a large number of written policies and procedures outside of the Operating Agreement that drivers are never given, but nonetheless are required to follow in their work. Defendant's written policies are contained in the FedEx Ground Manual, Operations Management Handbook, Settlement Manual and numerous other written and extra-contractual policies that are actively concealed from drivers and which Defendant fails to disclose and/or provide to drivers that govern the relationship between Defendant and the drivers. The other written handbooks and manuals and additional extra-contractual sources include, but are not limited, to written rules on "contractor" termination, directives and training provided to terminal managers, written rules on driver appearance (with illustrative poster), written and oral complaint procedures, memorandum and directives to terminal management and other rules concealed from and not provided to the drivers. When drivers do not follow a FedEx Ground rule, whether disclosed or undisclosed, known or unknown, they are subject to various types of punishment, some financial and some disciplinary up to and including contract termination and/or non-renewal. Defendant documents such so-called violations of such rules on forms referred to as "Business Discussion Notes" and retain

8

these documents in secret driver files called "DOT" files, along with myriad other documents which are likewise concealed from and not disclosed to the drivers.

24.     Defendant does not contribute to workers' compensation and unemployment insurance programs and do not allow drivers to apply or qualify for workers' compensation or unemployment benefits.

25.     Despite Defendant's control over virtually all material aspects of the employment relationship, and despite the unequivocal command of applicable statutes and case law to the effect that workers such as Plaintiff are entitled to the protections due employees under Massachusetts law, and despite the finding of the Los Angeles Superior Court in Estrada v. FedEx Ground Package Systems. Inc. (Case # BC 210130) that these drivers are employees, Defendant continues to misclassify its drivers as independent contractors. A decision that was later upheld by the California Court of Appeals. As a result, these drivers are deprived of the rights and protections guaranteed by Massachusetts law to employees, and they are .deprived of employer-financed workers compensation coverage and unemployment insurance benefits. Furthermore, the terms and conditions of their employment contract require these drivers to purchase, operate and maintain expensive trucks for Defendant's exclusive benefit and to work under other unlawful conditions. Defendant's mischaracterization of their drivers as independent contractors, the concealment and/or non-disclosure of the true nature of the relationship between Defendant and its drivers and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful and fraudulent business practice by Defendant which this court should enjoin.

26.     Under the rules established by the Internal Revenue Service ("IRS") regarding Classification of employees and independent contractors, FedEx Ground drivers are employees.

9

Defendant is in breach of a 1995 agreement reached between their predecessor company, Roadway Package System, Inc. ("RPS"), and the IRS regarding this Classification issue.

27.    In June 2010, the District Court for the Northern District of Indiana assigned under the FedEx Multi District Litigation ruled that similarly situated FedEx drivers from Illinois were employees and not independent contracts under Illinois wage laws.

## COUNT I

### (Declaratory Judgment pursuant to 28 U.S.C. Section 2201 and Mass. Gen. L. c. 231A)

28.    Under the relevant laws of the United States and of Massachusetts, Defendant has misclassified the Plaintiff as an independent contractor rather than as an employee; therefore, pursuant to 28 U.S.C. Section 2201 and Mass. Gen. L. c. 231A, this Court should issue a declaratory judgment establishing that the Plaintiff was an employee of Defendant and that the Plaintiff is/was therefore entitled to all the rights and benefits of employment pursuant to the laws of the United States and of Massachusetts.

## COUNT II.

### (Violation of Massachusetts Independent Contractor Law)

29.    By misclassifying Plaintiff as an independent contractor instead of an employee. Defendant has violated Mass. Gen. Laws c. 149 Section 148B. This claim is brought pursuant to Mass. Gen. Laws. c. 149 Section 150.

## COUNT III.

### (Violation of Massachusetts Wage Law)

30.     By such conduct in forcing the Plaintiff to bear costs incident to Defendant's business operations. Defendant violated Mass. Gen. Laws. c. 149 Sections 148 and 150 by making unlawful deductions and unlawfully requiring Plaintiff to pay improper set-offs against his wages. Defendant also violated Mass. Gen. Laws. c. 149 Sections 148 and 150 and c. 151 Section 1 for not paying Plaintiff for all time worked, including training time, and for withholding other wages owed, such as final paychecks and vacation pay.

## COUNT IV

### (Breach of Contract)

31.     Defendant has breached its written contracts with Plaintiff in which they made express and implied representations concerning the parties' rights and duties which proved untrue, (for example, in changing the drivers' routes without their permission, unilaterally terminating its contract with the plaintiff without cause), to Plaintiff's detriment, in violation of the common law of Massachusetts.

## COUNT V

### (Misrepresentation)

32.     Defendant has committed intentional and/or negligent misrepresentation in their representations concerning the parties' rights and duties, in violation of the common law of Massachusetts.

## COUNT VI

### (Unfair and Deceptive Business Practices)

33.     Defendant's conduct with respect to the Plaintiff as described above (including changing the drivers' routes without their permission, summarily terminated its contract with the plaintiff without cause and other breaches of their contracts and misrepresentations) constitutes unfair and deceptive practices in violation of Massachusetts Gen. L. c. 93A.

## COUNT VII.

### (Plan Enforcement Under ERISA)

34.     This Court has jurisdiction to hear this claim under 29 U.S.C. Section1132 (e)(l). In conformity with 29 U.S.C. Section1132 (h).

35.     Under 29 U.S.C. Section 1132 (a)(l)(B), Plaintiff is authorized to clarify and to enforce his rights to ERISA benefits in whatever plan for which he was eligible.

36.     Up to now, Defendant has taken the position that Plaintiff is not entitled to any ERISA benefits, based on Defendant's mistaken view that Plaintiff is not an employee.

37.     Because Plaintiff however, is an employee, he is entitled to employee benefits.

38.     Accordingly, under 29 U.S.C. Section1132 (a)(l)(B), Plaintiff is entitled to his benefits, declaratory relief, equitable restitution, and injunctive relief. Plaintiff is further entitled to prejudgment interest, costs, and attorneys fees pursuant to 29 U.S.C. Section 1132 (g) and the common fund doctrine.

## COUNT VIII.

### (Rescission Of Operating Agreement)

12

39.     Despite the express terms of the Operating Agreement, Plaintiff's relationship with Defendant satisfies every aspect of the test for employment, and not for independent contractor status.

40.     Defendant controls virtually every aspect of the Plaintiff's work and earnings, as set forth in the general allegations above.

41.     Despite this control and the actual status of the drivers as employees. Defendant mischaracterizes the Plaintiff as an independent contractor. As a result, he and other drivers must pay substantial sums of their own money for work-related expenses, including but not limited to the purchase or lease of vehicles meeting company specifications, and all costs of operating, insuring and maintaining those vehicles.

42.     The Operating Agreement illegally and unfairly advantages Defendant, by mischaracterizing the status of the Plaintiff in that Defendant evades employment related obligations, such as social security contributions, workers' compensation coverage, and state disability and unemployment compensation, illegally shifting the expense of workers' compensation coverage and other expenses to Plaintiff.

43.     The Operating Agreement between Defendant and Plaintiff is void as against public policy and therefore unenforceable, as failing to recognize the employment status of the Plaintiff and therefore denying him the legally cognizable benefits of employment.

44.     The Operating Agreement between Defendant and Plaintiff is an unconscionable contract of adhesion, which is unenforceable as contrary to the public interest, policy and law.

45.     The Operating Agreement illegally shifts the burden of certain costs that an employer must pay.

13

46. While acting on the direct instruction of Defendant and discharging their duties for Defendant, Plaintiff incurred expenses for, inter alia, the purchase or lease, maintenance, operating costs and adornment of vehicles; insurance; and uniforms. Plaintiff incurred these substantial expenses as a direct result of performing his job duties.

47. By misclassifying its employees as "independent contractors," and further by contractually requiring those employees to pay Defendant's own expenses, Defendant has been unjustly enriched.

48. As a direct and proximate result of Defendant's conduct. Defendant has received substantial benefits to which it had no entitlement, at Plaintiff's expense, including lost profits, self-employment taxes, premiums for insurance to replace workers compensation and disability benefits, business expenses, compensation of replacement workers, and other expenses.

49. Plaintiff is entitled to compensation for all of the business expenses he was illegally required by Defendant to bear, for all of the employment taxes, unemployment compensation and workers compensation FedEx/FedEx Ground should have but did not pay, and Plaintiff is entitled to the quantum meruit value of his services as an employee.

## COUNT IX.

### (Fraud)

50. Plaintiff was purportedly hired by Defendant to work as an "independent contractor" pursuant to the terms of the OA described above. In fact, Defendant knew or should have known, at all times, that the "independent contractor "Classification in the Operating Agreement was improper and that Plaintiff and all persons similarly situated were "employees" entitled to the benefits and protections of all laws enacted for employees. Plaintiff is informed, believes and on that basis alleges, that through the OA Defendant intentionally misled Plaintiff

14

as to his employment status, or made such representations to Plaintiff recklessly and/or negligently, and deliberately concealed from and/or failed to disclose to the pick-up and delivery drivers the extra contractual sources (including but not limited to the FedEx Ground Manual, Operation Management Handbook and Settlement Manual, other policies and secret driver files described above) that defined the employment relationship between Plaintiff and Defendant, all for the purpose of realizing unjust profits from Plaintiff's work and/or to avoid paying for its operating costs and payroll taxes to increase its competitiveness.

51.     At all material times. Defendant either knew, or should have known, that the material representation made to Plaintiff in the OA concerning his employment status, and the concealment and/or non-disclosure of material facts to Plaintiff concerning his employment status and Plaintiff's corresponding obligation to assume responsibility for all of his "own" employment-related expenses including but not limited to purchasing or leasing, operating and maintaining expensive trucks were false and fraudulent.

52.     At all material times. Defendant intended to and did induce Plaintiff and represent to reasonably and justifiably rely to their detriment on the false and fraudulent representations made to him by Defendant in the OA concerning his employment status and obligation to assume responsibility for all of employment related expenses including but not limited to purchasing or leasing, operating and maintaining expensive trucks and suffered damage as a direct and proximate result.

53.     By its aforesaid conduct, Defendant is guilty of oppression, fraud and malice in violating Plaintiff's rights and protections guaranteed by Massachusetts and other applicable law.

15

## COUNT X.

### (Unjust Enrichment)

54.    As a result of Defendant's conduct in misclassifying Plaintiff as an independent contractor. Defendant has forced Plaintiff to bear the normal costs and incidents of Defendant's business and have thus unjustly enriched themselves to the detriment of Plaintiff in violation of the common law of Massachusetts.

## COUNT XI

### (Conversion)

55.    By such conduct in forcing the Plaintiff to bear costs incident to Defendant's business operations. Defendant also converted the property of the Plaintiff to Defendant's own use in violation of the common law of Massachusetts.

## COUNT XII.

### (Promissory Estoppel)

56.    As a result of the misrepresentation of Defendant that Plaintiff and others would be  independent contractors and other misrepresentations regarding the parties' rights and duties, the Plaintiff and others were estopped from and forewent other employment and business opportunities in reliance on the promise of entrepreneurship inherent in the independent contractor relationship offered by Defendant, and, as such, Defendant has violated the common law of Massachusetts.

16

## COUNT XIII.

### (Quantum Meruit)

57.     Plaintiff has been deprived by Defendant of the fair value of his services and is thus entitled to recovery in quantum meruit pursuant to the common law of Massachusetts.

## COUNT XIV.

### (Injunctive Relief)

58.     As Defendant has at all times continued to misclassify Plaintiff as an independent contractor despite retaining control over him as an employee, the Plaintiff seeks permanent injunctive relief enjoining Defendant from practicing the unlawful practices alleged herein.

## JURY DEMAND

Plaintiff requests a trial by jury on his claims.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1.     A declaratory judgment that Plaintiff and other similarly situated persons are employees, not independent contractors;

2.     Disgorgement of profits unjustly retained by Defendant as a result of their unlawful practice of misclassifying Plaintiff and other similarly situated persons as independent contractors;

3.     All damages to which Plaintiff may be entitled;

4.     Rescission of the Operating Agreement and awarding restitution compensating for the reasonable value of the benefit provided to Defendant;

17

5.     Statutory trebling of damages and attorney's fees as provided for under Federal

Law and Massachusetts Law.

6.     An award of punitive damages and attorney's fees in an amount to be determined

at trial; and

7.     Any other relief to which Plaintiff may be entitled.



Respectfully submitted,
The Plaintiff, Darrell Debnam,
By his attorneys,


James W. Simpson, Jr.,
BBO#634344
100 Concord Street, Suite 3b
Framingham, MA 01702
(508) 872-0002


Matthew P. McCue, Esq.
BBO# 565319
The Law Office of Matthew McCue
179 Union Ave.
Framingham, MA 01702
(508) 620 1166

Dated: June 15, 2010